**BRADY v. FARLEY et al.**

District Court, S. D. New York.

June 9, 1939.

Platow, Lyon & Stebbins, of New York City (Henry V. Stebbins, of New York City, of counsel), for libellant.

Irving L. Evans, of New York City (Sol C. Salzer, of New York City, of counsel), for respondents.

GALSTON, District Judge.

The libellant was a passenger on the steamship Pan America on the voyage from New York to Brazil. She alleges that on or about July 13th, 1936, while she was sitting in a deck-chair, a hot piece of burnt paint or chip struck her right eye at a time that one of the members of the crew was

chipping or burning paint with the aid of a blow torch on the accommodation ladder.

Libellant's theory is that the deck steward placed the libellant's deck chair in close proximity to the accommodation ladder upon which work was going on and that such work was inherently dangerous; that the libellant was given no warning; that the respondents failed to erect a line and rope off the deck so as to keep the passengers away from the point of danger, and that they also failed to erect a canvas or other screen to keep the particles from reaching the passengers on this tourists' deck.

The respondents deny that they were negligent and assert as affirmative defenses that the libellant traveled under a contract ticket which obligated her to give notice to the respondents of a claim for her alleged injury within six months from the date of its occurrence; that she failed to give such notice and that they have been prejudiced in consequence thereof because they were unable to make a timely investigation of the facts; that the seamen employed on the steamship Pan America had left the vessel prior to the receipt of any notice or other information about the libellant's claim of alleged injury. It is also asserted as a separate defense that the vessel was in all respects seaworthy, had on board the required number of duly licensed and qualified officers, seamen and other personnel, and that if the libellant sustained any injuries while a passenger on board, such injuries were received by her without any privity, knowledge, negligence, fault or want of care on the part of the respondents.

The libellant's testimony is that on the morning of July 13, 1936, she went to the tourist class deck on the starboard side and occupied her deck-chair which had been placed that morning by the steward about six to eight feet from the ship's rail. While she was seated, passengers were playing shuffle-board on the deck and one of the blocks used in the game struck the foot of her chair. She arose from the chair, the foot of which had fallen down, and slightly turned it to avoid being hit by another block. In the latter position the chair was somewhat at an angle (other than right angle) to the ship's rail, and placed toward the forward part of the ship. While she was reading a book a noise attracted her attention, and she then observed a member of the crew working on the gang-plank outside of the rail. She said he had a lamp in one hand and a scraper in the other. She was about ten to twelve feet away. He was occupied, so she said, in burning paint off the gang-plank. She had continued her reading when, as she testified, "Suddenly a burning hot spot struck my right eye." She screamed, jumped up, put her hand to her eye and made for the door leading to the doctor's office. She said that Dr. Green, the ship's surgeon, worked on her eye for almost an hour and he removed something that he said was "a piece of paint."

Beyond the fact that it appears that a seaman was working on the companion ladder and that she did go to the doctor's office to be treated for the removal of a foreign particle from her eye, there is no corroboration of her story. The deposition of respondent's witness Leppik discloses that he was the boatswain on the steamship Pan America on the voyage in question and had been employed there as such for a period of seven years. The tourist passenger deck is aft of the main house. The accommodation ladder is located on the starboard side abreast of No. 6 hatch and between the fore part of that hatch and the purser's office. The ladder is about twenty-eight or thirty feet in length and has about twenty-eight steps. It is two feet in width and the steps are about a foot apart.

Leppik testified that the ladder is never used as a gang-plank at the port of New York but is always so used in South American ports. At sea it is swung out alongside the vessel, as illustrated in the photographs, Exhibits 10 and 11. This witness testified that on each southward bound voyage and while at sea, before reaching Rio Janeiro, which is the first South American port from New York, the ladder, which is made of wood, is slightly sand-papered, varnished, and the iron frame work painted. If necessary paint spots are scraped here and there with a small scraper. The work is usually done after crossing the equator, about three days or so before reaching Rio. The work was done under the supervision of the boatswain but under orders from the chief officer. During the seven years that Leppik served on the Pan America he never permitted a blow torch to be used. The ship did carry gasoline blow torches in her deck stores, but no gasoline.

The distance between the ship's side and the side of the ladder nearest to the

ship's side is about a foot and a half. Moderate weather prevailed on the day in question. It was testified that varnishing cannot be carried on in the presence of a salt spray.

The witness Paz had been employed on the Pan America for three years. It was part of his duties to work on the accommodation ladder and that he did on practically every voyage southbound from New York to Rio. The boatswain testified that he had assigned this seaman to work on the ladder on that trip. He used a scraper and sand-paper and testified that he had never used a blow torch on the accommodation ladder or on any other part of the vessel on any voyage.

I must conclude that there was no proof of libellant's contention other than her own testimony that a blow torch was used. The weight of the evidence is with the respondents. There is no proof that the work itself was negligently performed. Hence the ultimate inquiry is whether it was improper to do the work at all while the vessel was at sea and in the proximity of passengers.

Captain Gebauhr, an expert called on behalf of libellant, was of opinion that repair work of that kind should be done in port and not on the open sea.

On the other hand, it appears from the testimony of those on the Pan America that for many years it had been the custom to do this work at sea. True, that in itself would not necessarily be an answer to the claim of negligence.

King, chief officer of the Pan America, testified that when the ship is in the port of New York the accommodation ladder is turned up and lashed to the ship's side at the rail. After leaving port, weather permitting, the ladder is turned out and lies horizontal and parallel to the edge of the plate on the ship as shown in Exhibits 10 and 11. This witness explained why the ladder was turned up while the ship is in the port of New York. It appears that there is a hatch in the vicinity and if the ladder is down it cannot in that position be kept free of the slings in the loading or unloading operations. At sea it is desirable to place the ladder in horizontal position to afford the passengers a view of the sea and as much air as possible. He said that generally the freshening up of the ladder is effected on the day after the Neptune party, weather permitting, which is usually two or three days before arriving in Rio. It appears that one of the reasons why the ladder is freshened up before getting to Rio is that "the port officials, if it is dirty, will not go aboard."

Simmons, the master of the Pan America, also described the work of freshening the ladder as consisting of sand-papering and varnishing with re-painting of the stanchions. He said he never saw a blow torch used on the vessel while at sea.

Porter, an experienced master, had been in charge of ships trading with South America and had been, from time to time, in command of the steamship Pan America as well as of the Western World, a sister ship. He corroborated the other witnesses concerning the custom of freshening the accommodation ladder. This witness, with a vast experience on the sea and in South American waters, stated that it was perfectly safe practice to do the work on the accommodation ladder while the ship was at sea without placing a canvas or similar protection between the ladder and rail while men were working on the ladder. He added that the operation was always performed on the lee side of the vessel.

From the record I am unable to find that the libellant's burden of proof on the issue of negligence has been sustained.

Secondly the weight of the evidence is not sufficient to warrant the inference that the foreign substance which flew into the libellant's right eye was caused by any work done on the accommodation ladder. The mere happening of an accident is, of course, not proof of negligence. In re Luckenbach S. S. Co. v. Buzynski, 5 Cir., 19 F.2d 871.

Moreover, the ship's surgeon, Dr. Green, contradicted the libellant's testimony in respect to what took place in his office. His record shows only one entry—"Foreign body in right eye"—concerning the libellant. The entry discloses that he removed the material, applied cocaine and ointment of yellow oxide of mercury on July 13th at 10:30 A. M. There was no other entry relating to treatment of Mrs. Brady, and it was his practice to have entries show dressings if placed upon a patient's eye and to make a separate entry each time he saw a patient. Likewise Dr. Green denied that he had talked with the libellant on the voyage of the Pan America from Santos to Buenos Aires on or about January 2, 1937.

In the foregoing view of the case it is not necessary to discuss the affirmative defense that libellant failed to give a written notice of her alleged injury and claim

as required by the terms of the contract ticket. It may be said in passing, though, that no notice of claim was filed until April 26, 1937, more than nine months after the date of the alleged injury. The libellant seeks to show conformity with the provisions of Sec. 4283a of the United States Revised Statutes (Title 46, Sec. 183b, U.S. C., 46 U.S.C.A. § 183b) on the ground that she notified the doctor of her injury. But that position, even assuming that the doctor was the agent of the company authorized to receive claims, fails to distinguish between acquainting the doctor with the fact of injury and making a claim upon the steamship company for damages resulting from the injury. It was not compliance with the statute.

Accordingly the libel will be dismissed.

If this opinion is not in sufficient compliance with the rule requiring findings of fact and conclusions of law, submit findings of fact and conclusions of law in accordance therewith.